**David TARR, D.P.M., Individually and as a Class Action on Behalf of Plan Beneficiaries of the L.S. Starrett Company Health Plan, Plaintiffs,**

v.

**STATE MUTUAL LIFE ASSURANCE COMPANY OF AMERICA, and the Trustees of the L.S. Starrett Company Voluntary Employee Benefits Trust, Defendants.**

**Civil Action No. 94–40167–NMG.**

United States District Court, D. Massachusetts.

Jan. 30, 1996.

Norman H. Jackson, Boston, MA, for plaintiffs.

Jeffrey R. Hellman, Charles L. Howard, Hartford, CT, for defendants.

## MEMORANDUM AND ORDER

GORTON, District Judge.

█ Plaintiff, Dr. David Tarr, D.P.M., a podiatrist who practices in Athol, Massachusetts, filed a complaint in the above-entitled matter on October 24, 1994 against the administrator and insurance provider of certain employee health plans. Pending before this

Court are motions by the defendants 1) to dismiss all counts of plaintiff's complaint, pursuant to Fed.R.Civ.P. 12(b)(6), 2) to compel plaintiff to respond to defendants' requests for discovery, and 3) to refer the discovery dispute (which forms the basis of its motion to compel) to a magistrate judge. For the reasons stated herein, the motion to dismiss will be allowed and the other motions, accordingly, are moot.

## I. FACTUAL BACKGROUND

When considering a motion to dismiss, this Court accepts as true the allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *Carreiro v. Rhodes Gill and Co., Ltd.*, 68 F.3d 1443, 1446 (1st Cir.1995). Plaintiff's complaint asserts the following relevant factual allegations:

1. Several of plaintiff's patients have health plan coverage provided under a self-funded employee benefit plan named the L.S. Starrett Company Voluntary Employee Benefits Trust ("the Starrett Plan"). The Starrett Plan is administered by defendant, the Trustees of the L.S. Starrett Company Voluntary Employee Benefits Trust ("the Trustees"). Defendant, State Mutual Life Assurance Company of America ("State Mutual"), insures the employee health plan benefits of the L.S. Starrett Company. State Mutual also processes claims for "the State Mutual Plans," a number of employee benefit plans governed by ERISA which it insures as part of its general book of business. In the course of his practice, plaintiff has treated patients who are participants or beneficiaries under the State Mutual Plans.

2. For several years, plaintiff has adopted and followed the policy of accepting from his patients an assignment of their right to be reimbursed by insurance plans for services rendered by him. Plaintiff has then billed the insurance companies directly under the assignment. Until the Fall of 1993, State Mutual paid plaintiff's bills.

3. In the Fall of 1993, Starrett posted a notice to its employees effective October 25, 1993, that it would only cover the services of podiatrists who were official in-network participants of the State Mutual Plan. State Mutual began asking plaintiff for patient's

treatment records on all of his bills submitted to it. Plaintiff told the insurance company that it would have to obtain permission from the patients before he would release such records.

4. State Mutual requested and received such permission from numerous patients. It failed, however, to inform plaintiff of the names of those patients, made no further request for any medical records, and, with respect to certain claims for which no additional request for records was made, has had the claims "under review" for an unreasonably long period of time.

Plaintiff's complaint sets forth four counts:

Count I—a claim, pursuant to ERISA, to recover benefits due under the Starrett Plan,

Count II—a claim, pursuant to ERISA, to recover benefits due under the State Mutual Plans,

Count III—a state law claim for breach of contract, and

Count IV—a state law claim under M.G.L. c. 93A, for unfair trade practices.

In ¶ 11 of each Count, plaintiff also alleges that L.S. Starrett Company posted an inadequate "Notice of a Plan Change as required by ERISA."

On December 12, 1994, defendants filed the pending motion to dismiss all counts of the complaint based upon the following four arguments:

1) plaintiff's state law claims are preempted by ERISA,

2) plaintiff's ERISA claims are not ripe in that he has failed to exhaust the administrative remedies provided under the plans,

3) plaintiff lacks standing to challenge the modification of the Starrett Plan, and

4) the Trustees and State Mutual are not proper parties to be sued under Count I.

These arguments are considered *seriatim*.

## II. PREEMPTION OF STATE LAW CLAIMS BY ERISA

■ Defendants maintain that Counts III and IV of plaintiff's complaint, alleging

breach of contract and a claim pursuant to M.G.L. c. 93A, respectively, are preempted by ERISA. Section 514 of ERISA supersedes "any and all State laws insofar as they ... *relate to* any employee benefit plan...." 29 U.S.C. § 1144(a) (emphasis added). ERISA defines the term "State laws" to include "all laws, decisions, rules, regulations or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). The Supreme Court has established that a law "relates to" an employee benefit plan for purposes of section 514 "if it has a connection with or reference to such a plan." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990).

In *Ingersoll–Rand Co.*, the Supreme Court identified two tests for determining whether a cause of action is preempted by ERISA because it "relates to" an employee benefit plan. First, a claim is expressly preempted by ERISA where a plaintiff, in order to prevail, must plead, and the court must find, that an ERISA plan exists. *Id.* at 140, 111 S.Ct. at 483–84; *see also Vartanian v. Monsanto Co.*, 14 F.3d 697, 700 (1st Cir.1994). Second, even if there is no express preemption, a claim is preempted if it conflicts directly with a cause of action afforded by ERISA. *Ingersoll–Rand Co.*, 498 U.S. at 142, 111 S.Ct. at 485.

In the case at bar, plaintiff's breach of contract claim "relates to" plans that are subject to the strictures of ERISA because the Court's inquiry "must be directed to" the plans. *Vartanian*, 14 F.3d at 700; *Ingersoll–Rand Co.*, 498 U.S. at 140, 111 S.Ct. at 483–84; Plaintiff has alleged, and at trial would have to prove, the existence of the employee benefit plans governed by ERISA to support his claim that payments owed to him were wrongfully withheld. *See Ingersoll–Rand Co.*, 498 U.S. at 140, 111 S.Ct. at 483–84 (state law wrongful discharge claim preempted because "there simply is *no* cause of action if there is no plan"; emphasis in original). Also, the claims which underlie plaintiff's Chapter 93A action were for benefits under those same plans. In short, because

plaintiff must plead, and the Court must find, that the ERISA plans exist, plaintiff's state law claims are preempted. *Vartanian*, 14 F.3d at 700.[1]

In an attempt to avoid the preemptive sweep of ERISA, plaintiff responds that he has two kinds of claims against defendant, 1) "personal" claims, and 2) claims as an assignee of the beneficiaries of the plans. Plaintiff reasons that when suing on his own behalf, he cannot be an ERISA plaintiff, because the statute limits the class of plaintiffs who may bring an action under its civil enforcement provision. He further reasons that, if ERISA preempts his state law claims, he will be left without a remedy and, therefore, "[a]s to Dr. Tarr, personally, his 93A claims and his breach of contract claims cannot be preempted by ERISA." Plaintiff's Opposition at 6.

Plaintiff's arguments fail for two reasons. First, Dr. Tarr's assertion that he has "personal" claims is refuted by the fact that he has pleaded all of his claims as an assignee of his patients' "right[s] to be reimbursed by defendants for services performed by [him]." Complaint at ¶ 8. Second, "the lack of an ERISA remedy does not affect a preemption analysis." *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1333 (5th Cir.), *cert. denied,* 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992); *see also Vartanian v. Monsanto Co.*, 822 F.Supp. 36, 42–43 (D.Mass.1993), *aff'd,* 14 F.3d 697 (1st Cir. 1994). Accordingly, defendants' motion to dismiss will be ALLOWED as to Counts III (breach of contract) and IV (c. 93A) of plaintiff's complaint.

### III. FAILURE TO EXHAUST ADMINIS-TRATIVE REMEDIES

Defendants next maintain that plaintiff's ERISA claims (Counts I and II) should be dismissed because he has failed to exhaust the administrative remedies afforded by the plans.

---

1. Plaintiff's c. 93A claim is not saved from preemption by § 514(b)(2)(A), which exempts from ERISA preemption laws that regulate insurance. 29 U.S.C. § 1144(b)(2)(A). *See Pariseau v. Alba-* *ny Int'l Corp.,* 822 F.Supp. 843, 845–46 (D.Mass. 1993) (c. 93A does not "regulate insurance" within the meaning of that saving clause).

Courts which have considered the question have observed that:

[i]t is well established that, barring exceptional circumstances, plaintiffs seeking a determination pursuant to ERISA of rights under the pension plans must ... exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court.

*Communications Workers of America v. A.T. & T,* 40 F.3d 426, 431 (D.C.Cir.1994) (internal quotation omitted); *Drinkwater v. Metro. Life Ins. Co.,* 846 F.2d 821, 826 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Springer v. Wal–Mart Assocs. Grp. Health Plan,* 908 F.2d 897, 899 (11th Cir.1990). Although ERISA does not, by its terms, mandate exhaustion of remedies, courts have reasoned that ERISA's requirement that plans provide internal administrative procedures for the review of denials of claims demonstrates Congressional intent that the plans' internal claims procedures be used before resorting to the courts. *See Springer,* 908 F.2d at 899. "Because ERISA itself does not specifically require exhaustion of remedies available under pension plans, courts have applied this requirement as a matter of judicial discretion." *Communications Workers,* 40 F.3d at 432.

■ The exhaustion doctrine serves many important policy considerations, including: 1) the reduction of frivolous litigation, 2) the promotion of consistent treatment of claims, 3) the provision of a nonadversarial method of claims settlement, 4) the minimization of costs of claims settlement, 5) a proper reliance on administrative expertise, and 6) the development of a complete record for review by the courts. *Diaz v. United Agr. Employee Welf. Benefit Plan,* 50 F.3d 1478, 1483 (9th Cir.1995); *Springer,* 908 F.2d at 899.

Defendants argue that plaintiff has failed to complete the claims procedures or to utilize the plan review procedures available prior to bringing suit in this Court. Both of the plans at issue in the case at bar provide that the claim administrator may request that supplemental information be submitted in support of a claim. The plans also provide that an aggrieved claimant may request a review of a denial and that, upon such a request, a "full and fair" review is to be conducted, including the evaluation of additional information submitted by the claimant. Defendant concludes that 1) "despite repeated requests from State Mutual, the plaintiff has refused to submit the necessary documentation to perfect his original claim for benefits," and 2) plaintiff has stalled the process by failing to provide "information that, as claimant, it is his obligation to provide." Defendants' Memorandum at 13.

■ While acknowledging that courts generally require the exhaustion of remedies before initiating litigation, plaintiff asserts that in the case at bar recourse to the procedures outlined under the plans would have been futile. Indeed, courts allow an exception to the exhaustion requirement "when resort to the administrative route is futile or the remedy inadequate." *Drinkwater,* 846 F.2d at 826; *see also Giuffre v. Delta Air Lines, Inc.,* 746 F.Supp. 238, 240 (D.Mass. 1990). For the exception to apply, however, the plaintiff must assert facts supporting his claim of futility; "[a] blanket assertion, unsupported by any facts, is insufficient." *Drinkwater,* 846 F.2d at 826.

Plaintiff seeks to invoke the futility exception because 1) the plans at issue do not allow for review unless the beneficiary has received a written denial of a claim and 2) defendants have delayed acting on the claims since 1993. Plaintiff concludes that "[d]efendants refuse to deny or allow the claims. Defendant has, therefore, denied Plaintiff meaningful access to the appeals process." Plaintiff's Opposition at 6.

This Court agrees with defendants that the futility exception is inapplicable to this case because plaintiff's complaint itself pleads "willful noncompliance" with the claims process. Plaintiff's complaint avers, at ¶ 14, that State Mutual "began asking Plaintiff for patient's treatment records on *all* claims submitted by him" (emphasis added), yet ¶ 15 states that plaintiff informed the insurer that "[State Mutual] would have to obtain permission from [the] patients" before he would do so. Defendants properly observe that:

Without these records the plaintiff's claims cannot be processed. To allow the plaintiff

to block review of his claim by refusing to submit the documentation necessary to perfect them and then institute litigation to collect thereon, would directly contravene the purposes behind requiring exhaustion. . . .

Defendants' Reply Brief at 6–7.[2] Defendants' motion to dismiss Counts I and II of the complaint will, therefore, be ALLOWED.[3]

## IV. STANDING TO CHALLENGE MODIFICATION OF THE PLAN

■ Paragraph 11 of plaintiff's complaint alleges that, on October 25, 1993, Starrett posted a notice informing employees about a change in the terms of the Starrett Plan, and that such notice did not constitute adequate "Notice of a Plan Change as required by ERISA." Defendants contend that, insofar as that allegation constitutes a challenge to a modification of the plan, the plaintiff lacks standing to enforce the provisions of ERISA with respect to the Starrett Plan.

Plaintiff's claim that he has standing to enforce the notice requirements of ERISA is based on the fact that he has a valid assignment of rights from numerous patients who are participants and beneficiaries of ERISA plans and, therefore, he "has all the rights that a Participant or Beneficiary would otherwise have." Plaintiff's Opposition at 7.

As an initial matter, it is worth noting that § 502 of ERISA permits the following persons to bring a civil action to enforce that statute's provisions: 1) a plan participant, 2) a plan beneficiary, 3) a plan fiduciary, and 4) the Secretary of Labor. 29 U.S.C. § 1132(a). Many of the courts that have considered the issue have held that the list of proper plaintiffs in § 502(a) is exclusive. *E.g., Kwatcher v. Mass. Service Employees Pension Fund,*

879 F.2d 957, 964–65 (1st Cir.1989); *Lifetime Medical Nursing Servs., Inc. v. New England Health Care Employees Welfare Fund,* 730 F.Supp. 1192, 1195 (D.R.I.1990).

A number of courts, however, have held that a health plan provider may bring suit as the assignee of health care benefits from an ERISA plan participant or beneficiary, even though the health plan provider is not an enumerated plaintiff under § 502(a). *See e.g., Lutheran Medical Center v. Contractors Health Plan,* 25 F.3d 616, 619 (8th Cir.1994); *Misic v. Building Service Employees Health & Welfare Trust,* 789 F.2d 1374, 1378 (9th Cir.1986). Those courts have premised such an exception on promoting the Congressional intent to improve benefit coverage for employees and facilitating the receipt of plan benefits. *Lutheran Medical Center,* 25 F.3d at 619. In *Hermann Hosp. v. MEBA Medical & Benefits Plan,* the Fifth Circuit Court of Appeals explained that:

> To deny standing to health care providers as assignees of beneficiaries of ERISA plans might undermine Congress' goals of enhancing employees' health and welfare benefit coverage. Many providers seek assignments of benefits to avoid billing the beneficiary directly and upsetting his finances and to reduce the risk of nonpayment. If their status as assignees does not entitle them to federal standing against the plan, providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary. . . . The providers are better situated and financed to pursue an action for benefits owed for their services.

845 F.2d 1286, 1289 n. 13 (5th Cir.1988).

Even if this Court were inclined to follow those courts which permit a health care provider to bring suit as an assignee of health

---

2. Bearing in mind the procedural posture of the case, this Court assumes as true, for purposes of the instant motion, plaintiff's allegation that State Mutual has failed to provide him with a written notice of denial (thereby precluding use of the internal administrative procedure). That alone, however, does not suffice to invoke the futility exception, for even if plaintiff has never received a written notice of denial, that fact is due to his failure to file a perfected (i.e., complete) claim for benefits.

3. In light of the foregoing, there is no need to dwell on the fourth ground advanced by defendants in their motion to dismiss (i.e., that defendants are not the proper parties to be sued under Count I). Count I of plaintiff's complaint alleges a cause of action pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits allegedly due under the Starrett Plan. The proper defendant in a claim under that section, however, is the plan itself. *Rossi v. Boston Gas Co.,* 833 F.Supp. 62, 68 (D.Mass.1993).

care benefits from a plan participant or beneficiary, plaintiff would nonetheless still lack standing to enforce ERISA's notification requirements with respect to a modification of an ERISA plan. Defendants properly contend that the scope of plaintiff's right to sue should be coextensive with what is assigned, i.e., in this case, the right to collect payment under the plan for the services rendered by the assignee. *See* Plaintiff's Complaint at ¶ 8 (alleging that patients assigned to plaintiff "their right to be reimbursed by defendants for services performed by plaintiff"). That conclusion is bolstered by plaintiff's inability to direct this Court's attention to any case in which a health care provider, as an assignee of beneficiaries of ERISA plans, has been permitted to maintain an action extending beyond the scope of recovery of reimbursement due as an assignee.

■ Moreover, a failure to comply with the reporting requirements under ERISA does not serve as a basis for substantive relief. In *Lewandowski v. Occidental Chemical Corp.*, 986 F.2d 1006 (6th Cir.1993), the court surveyed the case law and reiterated the general rule that "ERISA does not remedy procedural violations with a damage award." *Id.* at 1010. Accordingly, even if the plaintiff had standing to challenge the notice given regarding an amendment of the Starrett Plan, he would not be entitled to the substantive relief he seeks.

Plaintiff responds to this latter point by citing cases in which courts have held that certain failures to comply with ERISA's procedural requirements may give rise to a substantive remedy. *See, e.g., Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991); *Simmons v. Diamond Shamrock Corp.*, 844 F.2d 517, 524–25 (8th Cir.1988). In *Kreutzer*, however, the court noted that an employer's procedural violations of ERISA entitle employees to monetary relief only in "exceptional cases," such as where the employer acts in bad faith, actively conceals the benefit plan, or prejudices its employees by inducing their reliance on a faulty plan summary.

The case at bar does not, however, constitute an "exceptional case" sufficient to invoke the exception to the general rule. Plaintiff has alleged neither bad faith on the part of defendants nor active concealment of plan provisions. Nor has plaintiff demonstrated any "significant reliance upon, or possible prejudice flowing from," the alleged procedural violation. *Govoni v. Bricklayers, Masons & Plasterers Int'l Union*, 732 F.2d 250, 252 (1st Cir.1984). Rather, plaintiff asserts in conclusory fashion that "[i]n this case, much of the harm flowed from the inadequate notice of a change in the plan." Plaintiff's Opposition at 8.

In connection with plaintiff's claim of detrimental reliance, the court is unenlightened by ¶ 11 of his complaint, which states in its entirety that:

> [d]uring the Fall of 1993 Starrett posted a notice effective October 25, 1993 telling its employees that in the future it would only cover the services "who are official in-network participants of the State Mutual PPO (MAP) Plan ..." Said posting did not constitute adequate notice of a Plan change as required by ERISA.

This Court is hard pressed to characterize the foregoing as an allegation of significant reliance or prejudice resulting from the alleged procedural violation. Plaintiff does not claim that State Mutual suddenly refused to reimburse him because he was not an "official in-network participant." Rather, the gravamen of plaintiff's claim is that State Mutual imposed an undue burden of requiring him to submit medical records in order to receive reimbursement. In light of the observation by one tribunal that courts "rightly have refused to create a blanket ground for recovery not provided for in ERISA, either by precluding any damage award or limiting such award to the most egregious of circumstances," *Lewandowski v. Occidental Chemical Corp.*, 986 F.2d 1006, 1009 (6th Cir.1993), this Court cannot conclude that the instant case implicates an exception to the general rule that substantive relief is not available for alleged procedural violations.

## ORDER

For the foregoing reasons, defendants' motion to dismiss the complaint is **ALLOWED**. Defendants' motion to compel and motion to

refer the discovery dispute to a magistrate judge are, accordingly, dismissed as moot.

So ordered.