**INTERNATIONAL FIDELITY INSURANCE COMPANY**
Plaintiff,

v.

Roberto SÁNCHEZ–RAMOS, et al., Defendants.

No. CIV. 05–1153(JAF).

United States District Court, D. Puerto Rico.

Oct. 26, 2005.

David W. Roman, Brown & Ubarri, San Juan, PR, for Plaintiff.

Jose Enrico Valenzuela–Alvarado, Department of Justice, San Juan, PR, for Defendants.

### OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiff, International Fidelity Insurance Company ("IFIC" or "Plaintiff"), filed the present complaint against Defendants Roberto Sánchez–Ramos ("Sánchez"), Secretary of Justice of Puerto Rico; José Pérez–Ramírez ("Pérez"), Director of the Forfeitures Division of the Puerto Rico Department of Justice ("PRDOJ"); Armando Alonzo–González ("Alonzo"), Special Prosecutor in the Forfeitures Division of the PRDOJ; and Dorelisse Juarbe–Jiménez ("Juarbe"), Commissioner of Insur-

ance of Puerto Rico ("COI"), alleging violations of the Fifth and Fourteenth Amendments of the United States Constitution, U.S. CONST. amends. V & XIV under 42 U.S.C. §§ 1983 and 1985 (2003 & Supp.2005), and various state laws. *Docket Document No. 1.* Each Defendant is being sued in both their official and personal capacities.

Defendants move to dismiss Plaintiff's claim pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), averring that: (1) the court should abstain from hearing the present case in deference to past and ongoing Commonwealth proceedings; (2) COI Juarbe is entitled to absolute immunity; (3) alternatively, all Defendants are entitled to qualified immunity; (4) Eleventh Amendment Immunity bars monetary claims sought by Plaintiff; (5) Plaintiff's pleadings fail to establish valid claims under either 42 U.S.C. §§ 1983 or 1985; and (6) the court should dismiss Plaintiff's supplemental jurisdiction claims. *Docket Document No. 46.* Plaintiff opposes the motion. *Docket Document No. 51.* Defendants respond to Plaintiff's opposition. *Docket Document No. 54.*

## I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from Plaintiff's complaint. *Docket Document No. 1.* As we must, we "accept as true the factual averments of the complaint and draw all reasonable inferences therefrom in the plaintiffs' favor." *Educadores Puertorriqueños en Accion v. Hernandez,* 367 F.3d 61, 62 (1st Cir.2004).

Plaintiff IFIC, a corporation organized under the laws of New Jersey with headquarters in Newark, New Jersey, provides service in the criminal bail bond industry in all fifty of the United States and Puerto Rico. IFIC is licensed to operate in Puerto Rico under a certificate of authority issued by the COI.

In criminal proceedings in the Puerto Rico court system, whenever a court sets bail as a condition to release a defendant, the defendant may submit a bail bond secured by sureties, such as Plaintiff IFIC, in lieu of the full bail amount.

IFIC does not deal directly with individual criminal defendants, but instead authorizes selected persons to act as local bail bondsmen on its behalf in Puerto Rico. IFIC issues the bondsman a limited power of attorney, known as an IT Form, allowing the bondsman to post a bond for a criminal defendant up to a certain dollar amount. The bondsman submits the executed IT Form to the court presiding over the defendant's case, and if approved, a surety contract between the State and IFIC is formed, and the defendant is released. IFIC is then liable to the State for the full bail amount if the criminal defendant does not appear for his court appearance or trial.

If a criminal defendant fails to comply with the conditions of bail, the presiding court must notify IFIC or its agent and order IFIC to show cause as to why the bail amount should not be forfeited. If IFIC does not satisfactorily explain the criminal defendant's noncompliance, the court enters summary judgment against IFIC, forfeiting the entire bail amount. This judgment does not become final and enforceable until forty days have passed from the date IFIC or its agent have received notice thereof. If within this forty-day period IFIC produces the defendant to the presiding court, the judgment is set aside. Once a judgment becomes final and enforceable, it is remitted to the Secretary of Justice of Puerto Rico so that he may proceed with its execution. 34 L.P.R.A.App. II R. 227.

In April 2002, IFIC learned from a third party that the PRDOJ had a list of judgments against IFIC for forfeited bail bonds of which IFIC had previously not been notified. IFIC asked the PRDOJ whether this was true and also notified the Office of the COI about its concerns. In September 2004, after what IFIC characterizes as "considerable delay and much prodding," the PRDOJ produced an official list of all final and enforceable forfeiture judgments for which IFIC was liable. Accounting for both the principal balance and interest, the cases on the official list of judgments totaled $2,718,878.56.

Discussions between IFIC and the PRDOJ continued throughout the Fall of 2004 and into January 2005, during which time IFIC continued to object to paying the forfeiture judgment for all cases in which it claimed it had not received notice.

On January 19, 2005, Defendant COI Juarbe, at the urging of Defendants Sánchez, Pérez, and Alonzo, all of the PRDOJ, ordered IFIC to pay $1,434,900 for 176 forfeiture judgments. In addition, the COI imposed a fine of $176,000 to penalize IFIC for its failure to thus far satisfy these 176 judgments. The COI ordered IFIC to pay the total amount of $1,610,900 by February 8, 2005, or else show cause why IFIC's certificate of authority to do business in Puerto Rico should not be suspended or revoked.

Plaintiff IFIC filed the present complaint on February 7, 2005, alleging that it is being deprived of its property without due process of the law by defendants. *Docket Document No. 1.* On February 8, 2005, Plaintiff filed an Emergency Motion requesting a preliminary and permanent injunction enjoining defendants and their agents from suspending or revoking IFIC's certificate of authority to operate in Puerto Rico and from collecting the sum demanded for the 176 forfeiture judgments. *Docket Document No. 3.* Defendants responded to the Emergency Motion on February 15, 2005. *Docket Document No. 8.* While the current controversy proceeded in this court with extensions of time being granted to both parties, *Docket Document Nos. 21, 31, 44, 45, 47, 48,* the Office of the COI, pursuant to Commonwealth law, began its own administrative hearing regarding the 176 disputed forfeiture judgments. *Docket Document Nos. 40, 41.* Defendants moved to dismiss the federal case on May 9, 2005. *Docket Document No. 46.* Plaintiff filed an opposition on August 1, 2005. *Docket Document No. 51.* Defendants filed a response to Plaintiff's opposition on August 19, 2005. *Docket Document No. 23.*

## II.

### *Legal Standards*

### A. *Motion to Dismiss Standard Under Rule 12(b)(1)*

Under Rule 12(b)(1), a defendant may move to dismiss an action against him for lack of federal subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). The party asserting jurisdiction has the burden of demonstrating its existence. *See Skwira v. United States,* 344 F.3d 64, 71 (1st Cir. 2003) (citing *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995)).

Rule 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction," including ripeness, mootness, the existence of a federal question, diversity, and sovereign immunity. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 362–63 (1st Cir.2001). A moving party may mount a "sufficiency challenge," taking the plaintiff's "jurisdictionally-significant facts as true" and requiring the court to "assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." *Valentin,*

254 F.3d at 363. Alternatively, when the jurisdictional facts are distinct from the case's merits, a moving party can bring a "factual challenge," in which case the court addresses "the merits of the jurisdictional claim by resolving the factual disputes between the parties." *Id.*

### B. *Motion to Dismiss Standard Under Rule 12(b)(6)*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action against him based solely on the pleadings for the plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993); *see also Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992). We then determine whether the plaintiff has stated a claim under which relief can be granted.

We note that a plaintiff must only satisfy the simple pleading requirements of Federal Rule of Civil Procedure 8(a) in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Morales–Villalobos v. Garcia–Llorens*, 316 F.3d 51, 52–53 (1st Cir.2003); *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55–56 (1st Cir.1999). A plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and need only give the respondent fair notice of the nature of the claim and petitioner's basis for it. *Swierkiewicz*, 534 U.S. at 512–515, 122 S.Ct. 992. "Given the Federal Rules' simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* at 514 (citation omitted).

### III.

### *Analysis*

In their motion to dismiss, Defendants argue that Plaintiff's claims must be dismissed as the administrative quasi-judicial procedure currently before the Puerto Rico Office of the COI triggers the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). For the reasons set forth below, we agree that the *Younger* abstention doctrine applies to the case at hand and, therefore, do not reach Defendants' other arguments as to why this case should be dismissed.

 We note, as a preliminary matter, that federal abstention is appropriate in certain delineated cases due to the discretion federal courts enjoy in fashioning certain types of relief. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813–14, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, abstention is "the exception, not the rule. The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813 (citation omitted). Accordingly, "abstention rarely should be invoked." *Ankenbrandt v. Richards*, 504 U.S. 689, 704, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) (citation omitted).

### A. *Younger Abstention*

 Under the *Younger* abstention doctrine, a federal court must abstain from reaching the merits of a case if there is (1) an ongoing state judicial proceeding, instituted prior to the federal proceeding, that (2) implicates an important state interest, and (3) provides an adequate opportunity

for the plaintiff to raise the claims advanced in his federal lawsuit. *Brooks v. N.H. Sup.Ct.*, 80 F.3d 633, 638 (1st Cir. 1996). While fulfillment of these three requirements for *Younger* abstention usually ends the federal inquiry, a court may "nonetheless intervene to halt an ongoing state judicial proceeding if the plaintiff demonstrates 'bad faith, harassment, or any other unusual circumstance.'" *Id.* at 639 (quoting *Younger*, 401 U.S. at 54, 91 S.Ct. 746).

The abstention rule articulated in *Younger* originally affected only those cases in which there were ongoing state criminal proceedings. *Younger*, 401 U.S. at 53–54, 91 S.Ct. 746. In a series of subsequent holdings, the Supreme Court expanded the abstention rule to apply to certain types of state civil proceedings. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–17, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Defendants claim that the administrative procedure currently before the Office of the COI is just such a state civil proceeding that satisfies all three *Younger* elements. *Docket Document Nos. 46, 54.*

There is no doubt that the administration of the insurance industry implicates an important state interest and, therefore, the second *Younger* criterion is clearly established. *See Gionorio v. Gomez*, 301 F.Supp.2d 122, 129 (D.P.R.2004) (In examining COI administrative hearings in Puerto Rico, the Court stated that "there is no question that the insurance industry implicates important state interests."). We, therefore, limit our inquiry to examining whether the proceedings at the Office of the COI satisfy the first and third *Younger* elements.

■ In order for an administrative hearing to qualify as an ongoing state proceeding for purposes of *Younger*, it must have been filed prior to the federal action and it must be judicial in nature. *Giono-*

*rio*, 301 F.Supp.2d at 129 (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369–71, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989)). As Plaintiff acknowledges that the COI proceedings were initiated prior to its filing this federal action, *Docket Document No. 51*, we turn our focus to whether the COI proceedings are judicial in nature.

■ "A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end." *New Orleans Pub. Serv., Inc.*, 491 U.S. at 370, 109 S.Ct. 2506. The administrative proceedings that *Younger* is meant to protect must provide the parties involved with an opportunity to be heard and to present their version of the facts before a final determination is made; a neutral fact-finding process. *Gionorio*, 301 F.Supp.2d at 129.

■ Defendants contend that the proceedings at the Office of the COI are litigated in the context of a full adversarial process, with both parties being represented by counsel, and the COI issuing a final written decision in reliance of its own precedent and that of Commonwealth and Federal courts. The decision of the COI may ultimately be reviewed for error by the Puerto Rico Court of Appeals, pursuant to the Administrative Procedure Act of the Commonwealth of Puerto Rico. 3 L.P.R.A. §§ 2101–2201; *Docket Document No. 46.* Defendant's characterization of the COI proceedings, which is uncontested by Plaintiff, is corroborated by both Commonwealth statutes and the record. 3 L.P.R.A. §§ 2101–2201; *Docket Document No. 41.*

We are satisfied that the COI hearings parallel other State administrative proceedings brought as enforcement actions that have consistently been declared to

satisfy the *Younger* judicial requirement. *See e.g. Maymo–Melendez v. Alvarez–Ramirez,* 364 F.3d 27, 31–32, 34 (1st Cir.2004) (applying *Younger* principles to state administrative disciplinary proceeding of horse trainer); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 434–35, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (*Younger* abstention appropriate where plaintiff sought to enjoin ongoing state administrative attorney disciplinary proceedings); *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (*Younger* abstention appropriate in context of state child removal proceedings due to allegations of child abuse); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (*Younger* applies to state proceeding to recover fraudulently obtained welfare payments); *Esso Std. Oil Co. (P.R.) v. Mujica Cotto,* 389 F.3d 212, 217–18 (1st Cir.2004) (using *Younger* to require abstention in case where environmental board brought state administrative proceedings against gasoline station owner seeking to fine it). As such, we find that the COI proceedings are judicial in nature and, therefore, satisfy the first *Younger* criterion.

Plaintiff's sole argument that *Younger* abstention is not appropriate for the case at hand rests on the third qualifying element, i.e., that the ongoing COI hearings do not provide it adequate opportunity to present the constitutional claims it is asserting in the current Federal action. Plaintiff asserts that the COI proceedings are not the appropriate venue to raise federal constitutional due process claims regarding past State judgments as the COI is charged with executing decisions of the Commonwealth courts, not questioning them. *Docket Document No. 51.*

■ In determining whether an ongoing State judicial proceeding fails to give a party an adequate opportunity to present federal claims, "the test is whether 'state law clearly bars the interposition of the constitutional claims.'" *Brooks,* 80 F.3d at 639 (quoting *Moore,* 442 U.S. at 415, 99 S.Ct. 2371). Plaintiff fails to provide the court with any guidance as to what Commonwealth law, administrative rule or procedure clearly bars the presentation of its constitutional claims in front of the COI.

■ In making an assessment of whether a party has an adequate opportunity to advance its federal claims, courts must look not just at the initial administrative hearing in question, but also at the adequacy of the eventual judicial review of the administrative decision. *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 629, 106 S.Ct. 2718, 91 L.Ed.2d 512 (U.S.1986); *N.Y. State Club Ass'n v. City of New York,* 487 U.S. 1, 15, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988); *Esso Std. Oil Co.,* 389 F.3d at 220. Even assuming arguendo that the COI hearings would not provide Plaintiff the opportunity to present its constitutional claims, the eventual judicial review of the COI decision in Commonwealth courts would provide Plaintiff adequate opportunity to present its constitutional due process claims. *See Maymo–Melendez,* 364 F.3d at 36 ("How far the Racing Board would entertain constitutional objections to its regulations or practices is unclear, but the state court clearly would do so and this is enough.").

Plaintiff does not address the adequacy of the Commonwealth courts' review of COI hearings, and we can find no support for the contention that state courts would not be able to entertain Plaintiff's constitutional objections. As such, we find that all three *Younger* elements are satisfied by the COI quasi-judicial proceedings and

their possible appeal to Commonwealth courts.[1]

Even in cases where all *Younger* elements have been satisfied, federal courts "should not abstain where the state proceedings are undertaken in bad faith or other extraordinary circumstances are involved or a patently unconstitutional statute is at issue." *Younger*, 401 U.S. at 54, 91 S.Ct. 746. Although this court is troubled by the manner in which Plaintiff's case has been treated by the PRDOJ and the COI,[2] we cannot find, nor does Plaintiff introduce, the bad faith necessary to bypass our required abstention pursuant to *Younger*. Consequently, we must abstain in deference to the ongoing Commonwealth proceedings regarding the disputed forfeiture judgments.

## IV.

### *Conclusion*

In accordance with the foregoing, we **GRANT** Defendants' motion to dismiss. *Docket Document Nos. 46, 54.* Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

---

1. As far as we know, Plaintiff may make an *England* reservation of federal rights in its administrative/judicial pleadings, thus safeguarding its federal rights for possible later adjudication in federal court. *See England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

2. For example, during the COI administrative hearing, the COI witness responsible for investigating judgments against Plaintiff stated that in order for a judgment to be included in the COI's charge against Plaintiff, it was necessary that the COI possessed a copy of the bail bond in question, a copy of the judgment, and a copy of the notification of the judgment. However, during cross-examination, the witness conceded that of the 176 judgments he had deemed to be valid and, therefore, included in the charge against Plaintiff, at least thirteen did not include any copies of notification of judgment, while another six judgments notified individuals whose connection to Plaintiff was unknown. *Docket Document No. 41.*